REYNOLDS *v.* SNYDER.

Opinion delivered November 15, 1915.

1. LIMITATIONS—WILD AND UNOCCUPIED LANDS—SEVEN YEARS PAYMENT.—The payment of taxes under color of title for seven consecutive years upon wild and unoccupied lands, confers title by limitation. (Kirby's Digest, § 5057.)

2. TAXES—PAYMENT OF—PRESUMPTION.—Appellee claimed title to land by reason of payment of taxes for seven consecutive years, the land being wild and unoccupied. It appeared that taxes for 1905 and 1907 were paid, and noted on the record as paid by one Miller, a grantor in appellee's claim of title. The 1906 taxes were noted as paid, and Miller was noted as owner. *Held*, under the facts, for the purposes of appellee's claim under Kirby's Digest, § 5057, that the taxes for 1906 were paid by his grantor.

Appeal from Ouachita Chancery Court; *James M. Barker*, Chancellor; affirmed.

STATEMENT BY THE COURT.

Appellee brought this suit to quiet his title to a tract of land in Ouachita County, alleging that he was the owner thereof, that he and those under whom he claimed had paid the taxes on the lands, which were wild and unoccupied, for seven consecutive years, under color of title, and alleged that the tax title under which defendant claimed it was void.

The answer denied that appellee was the owner of the lands and that he was in possession thereof by the payment of taxes as alleged and claimed the title under a clerk's tax deed, executed June 12, 1914.

The testimony shows that Sam Dunn and wife conveyed the land to Nathan Miller on March 28, 1904, who in turn conveyed it to Oliver O. Miller on January 3, 1905. He conveyed to W. F. Bernard on June 17, 1908, who made a deed to Arissa S. Miller on June 24, 1908.

She conveyed the lands to V. D. Maxey on October 6, 1909, who by warranty deed conveyed them to C. V. Snyder on April 6, 1911.

The taxes were paid by appellee and his grantors for the years from and including 1901 to 1911, with the exception of the year 1906. Relative to this year it appears that the tax receipt had been lost and the tax records introduced in evidence show, in the real estate book, for 1906, an entry as follows: Owners name, Miller, Oliver; the description of the land; valuation, taxes, and under the column marked "when paid," "4/10." It also shows the figures "235" in the column for "Page of record of receipt." There was no receipt recorded on that or any other page of the tax receipt record, however, nor any further testimony showing by whom the taxes were paid; the records did show that the lands were not returned delinquent or sold for taxes for that year.

Oliver Miller paid the taxes for the years 1905 and 1907 and, as already stated, conveyed the lands on June 17, 1908.

The testimony shows also that the tax deed was void because of the clerk's failure to certify at the foot of the record of delinquent lands, before the second Monday in June, in what newspaper the delinquent list was published.

The court found in favor of the plaintiff and quieted his title, from which judgment this appeal is prosecuted.

*A. N. Meek,* for appellant.

Appellee has not proved title in himself by the statute of limitations or otherwise, sufficient to overcome appellant's tax deed, which by statute is *prima facie* title. Kirby's Dig., § 7105.

The plaintiff in a suit to quiet title must show title in himself. 76 Ark. 447.

The tax receipts offered by appellee are not in proper form, do not describe the land in controversy, with reference to their location to either the base line or the Fifth Principal Meridian. 94 Ark. 119. The failure to prove a payment of taxes for the year 1906 broke the continuity

of such payments, and the attempt to overcome this break in continuity by the list of real estate subject to taxation for this year, whereby it appears that the lands were assessed in the name of Oliver Miller and that the taxes were paid, proves nothing except that for that year somebody paid the taxes.

The proof is not sufficient to discharge the burden of proving that Oliver Miller, one of his grantors, paid the taxes for that year. 94 Ark. 118. From the testimony the conclusion is clear that no tax receipt of the year 1906 was issued and that the taxes on the lands were not paid. Kirby's Dig., § § 7061, 7062, 7063.

*Chas. N. Martin,* for appellee.

1. The original receipt for the taxes for the year 1906, having been lost, appellee introduced the real estate tax book for that year, the same being the next best evidence. From this it appeared that the land was assessed in the name of O. O. Miller, and that on the margin of the record opposite his name, under the heading "When paid" appears the notation "4/10." This is sufficient evidence to warrant the finding that the taxes for that year were paid. 59 Hun (N. Y.) 129; 128 N. Y. 334; 28 N. E. 604. And, since the statute requires that real estate shall be assessed in the name of the owner, Kirby's Dig., § 7018, that they were paid by O. O. Miller. See also 139 S. W. 28; 37 Cyc. 1167. Moreover, since the proof shows that the land was not returned delinquent for that year, and that the land was assessed in the name of and the taxes paid by O. O. Miller the year before, and the year following, the law will presume that he paid the taxes on the land for the year 1906. *Supra;* 2 Blackwell on Tax Titles, 5 ed., § 834; *Id.* 838, § 837.

The title is established in appellee by proving seven consecutive payments of taxes under color of title and this warranted the chancellor in cancelling the void tax sale and quieting title in appellee. 97 Ark. 371; 83 Ark. 534; 80 Ark. 74; 74 Ark. 302; 38 Ark. 181.

2. The tax sale was void for failure of the clerk to certify the record of delinquent lands before the day of

sale.   84 Ark. 320; 81 Ark. 296; 80 Ark. 583; 74 Ark. 584; 68 Ark. 248.

KIRBY, J., (after stating the facts).   Appellant contends that the appellee failed to show sufficient title in himself to warrant the relief granted as against his void tax deed, which was *prima facie* evidence of title.

In a suit to quiet title the plaintiff must recover upon the strength of his own title, and not upon the weakness of the title of his adversary.   *Carpenter* v. *Smith,* 76 Ark. 447; *Wilson* v. *Rogers,* 97 Ark. 369; Kirby's Digest, § 7105; *Osceola Land Co.* v. *Chicago Mill & Lumber Co.,* 84 Ark. 8; *Rhea* v. *McWilliams,* 73 Ark. 557.

It is also true that the payment of taxes under color of title for seven consecutive years upon wild and unoccupied lands, confers title by limitation.   Section 5057, Kirby's Digest; *Towsen* v. *Denson,* 74 Ark. 302; *Van Etten* v. *Daugherty,* 83 Ark. 534; *Wilson* v. *Rogers,* 97 Ark. 371; *Paragould Abstract Co.* v. *Coffman,* 100 Ark. 582.

There is no question but that the conveyances of the land from Ida and Jno. Bell in July, 1901, down to and including the deed from Maxey to Snyder, appellee, on April 6, 1911, constituted color of title, nor that the lands are wild and unoccupied.   It is strongly urged, however, that there is not sufficient testimony to support the court's finding that the taxes were paid by the appellee and his grantors for the seven consecutive years and no testimony showing by whom they were paid for the year 1906. The lands were not returned delinquent and sold for the non-payment of taxes for the year 1906 and the record shows the taxes for 1905, before, and 1907, afterward, to have been paid by Oliver O. Miller, who was named in the real estate tax book for the year 1906 as the owner. There was also the notation on said tax book by the collector in the column "When paid," showing the taxes on the tract of land to have been paid "4/10,"—fourth month, 10th day, that year.

We think this is sufficient evidence in view of the further showing that the lands were not returned delinquent nor sold for taxes that year, to support the

court's finding that the taxes were paid. 2 Blackwell on Tax Titles, 837; 37 Cyc. 1167.

The law requires the clerk in making the tax books to set down each separate tract of real property opposite the name of the owner and that the tax books shall be a public record and preserved as other records of the county, in the office of the county clerk. Sections 7018, 7028, Kirby's Digest.

The owner of the lands is required to pay the taxes thereon and the tax books show the name of Oliver O. Miller as owner, who had a deed therefor and had paid the taxes thereon for the year 1905 and 1907, the inference of fact arises, the taxes having been paid for 1906, that they were paid by him, and is sufficient to support the court's finding without regard to the presumption of law that the taxes were paid by the owner. Appellee alleged in his complaint that he and his grantors under whom he claimed title to the lands had paid the taxes thereon for more than seven years prior to the tax forfeiture complained of, which was a sufficient allegation to permit him to prove the payment of taxes under color of title for the seven consecutive years, and having proved such payment, to the relief granted. We find no prejudicial error in the record and the judgment is affirmed.

SMITH, J., (dissenting). It appears from the statement of facts in the majority opinion that appellee Snyder bought the land from Maxey, who bought from Arissa Miller, who bought from Bernard, who bought from Oliver O. Miller, who is said to have paid the taxes for the year 1906. Oliver Miller purchased from Nathan Miller in January, 1905. No one testified that Oliver Miller had lost the tax receipt for the year 1906, or that he ever had one. Appellee did testify that when he purchased the land from Maxey he called on him for his abstract and all his papers, and that when this suit was brought his attorney told him it would be necessary for him to get up his old deeds and tax receipts, and that he tried to locate Maxey for this purpose. That at the time of his purchase Maxey was a resident of the State of Kansas, and

the people who had owned the land for ten or fifteen years immediately before that time were also residents of Kansas.   Upon this subject appellee further testified: "My recollection is that Mr. Maxey had all the deeds and tax receipts that had been made to and issued upon this land for ten or eleven years, before I bought from him, and they were the deeds and title papers he was looking for and had lost.   I know Mr. Maxey made a careful and diligent search for this purpose, for I was with him part of the time.   He looked through his trunk and everything else in his room where valuable papers were most likely to be kept.   I did not have in my possession any of the tax receipts showing who paid the taxes on the lands hereinbefore described for the years 1895 to 1911.   Mr. Maxey lost the tax receipts to these lands."

But this evidence does not show the existence of a tax receipt for the year 1906, nor its loss.   The only other proof of payment of taxes by persons in appellee's chain of title are the circumstances set out in the majority opinion.   These are that the lands were assessed on the tax books in the name of Oliver Miller for the year 1906 and that in the column of the tax books marked "When Paid" were the figures "4/10th" and that Oliver Miller did in fact pay the taxes for the preceding and the subsequent year.   Attention is called to the fact that in the column of the tax books marked "Page of Record of Receipts" appears the figures "235" but that no receipt for the taxes on this land appears on that page, or any other, for that year.

The majority do not base their holding upon the finding that the evidence shows that Miller had lost the receipt for the taxes for the year 1906.   On the contrary, the opinion is put upon the ground that the other circumstances mentioned are sufficient to support the finding that the taxes were paid by Miller.   From this view I dissent.   It is true the lands were assessed for taxes in the name of Oliver Miller, but no statute provides and no case has ever held that that fact is proof of ownership, and the land was so entered on the book *before* the taxes were

paid.    Payment of the taxes in question might have been shown by the production of the receipt, which would, of course, be the best evidence.    If the taxes had ever been paid and the receipt issued, but had been lost, this fact might have been shown, or, failing to prove the payment of taxes in either of these ways, the tax book, together with the tax receipt record, could have been used for this purpose.    It is highly probable that these taxes were not paid by any one for the year 1906.    This is indicated by the fact that there was written opposite this tract in the column intended to show the page of the receipt record where the receipt was recorded the figures "235," but no such receipt was recorded on that page nor elsewhere in the book, and the wrong land may have been marked paid "4-10."    The collector may have inadvertently written the figures herein set out opposite the tract of land in question when they should have been written opposite the tract on which the taxes were in fact paid.    Of course, this is mere surmise, but if these figures do show that the taxes were paid they do not show that Miller paid them.    The presumption is that they were not paid by him, but were paid by the true owner, as Miller at that time had only color of title.

But it is said that upon payment of the taxes for this year and the subsequent years this color of title ripened into title under section 5057 of Kirby's Digest.    But the fallacy of this argument is that this color of title could not ripen into title under section 5057 of Kirby's Digest until there had been seven consecutive payments of taxes, and it required payment for the year 1906 to make the necessary continuity of payments.    I submit that it can not be presumed that Miller paid the taxes for the year in question because of the fact that with this payment and the subsequent payments the title was acquired under the provisions of section 5057 of the Digest.    Such holding builds a presumption upon a presumption.    It requires us to presume that one who had only color of title at the time taxes were paid, paid them, when the presumption of the law is that, the payment was made by the true owner.

I submit that, although the majority admit the existence of this presumption, they have failed to follow it in its application to the facts of this case, and have indulged a presumption to the contrary, and I therefore dissent.