SHOUSE *v.* SCOVILL.

4-5908                                            139 S. W. 2d 240

Opinion delivered April 22, 1940.

*Clyde Rogers,* for appellant.

*M. A. Hathcoat,* for appellee.

SMITH, J. On August 25, 1922, Sarah Evans executed a mortgage to the Conservative Loan Company on the lands involved in this litigation, to secure her note for $2,500, which fell due December 1, 1932. The mortgagee sold and assigned the note and mortgage to H. T. Scovill. Both the mortgage and the assignment thereof were properly recorded.

On October 20, 1922, Sarah Evans executed a second mortgage on the same lands to Mattie Patton to secure a note for $6,100, which mortgage was recorded on the day of its execution. Mrs. Patton brought suit to foreclose this mortgage, and a foreclosure decree was rendered at the September, 1924, term, pursuant to which the lands were sold and Mrs. Patton became the purchaser at the foreclosure sale, and on March 2, 1925, she received the deed of the commissioner who made the sale. On May 19, 1925, Mrs. Patton conveyed the lands to J. Loyd Shouse by a quitclaim deed, and for the next several

years the lands were rented by Shouse to various tenants, the last being his brother, C. B. Shouse.

Four of the tracts of land here involved forfeited to the state for the nonpayment of the 1931 taxes, and C. B. Shouse purchased the lands from the state and received a deed from the State Land Commissioner on September 18, 1936. The remaining tract of land involved in this litigation was sold for the 1935 taxes to O. W. Watkins, who, on January 30, 1939, after receiving a tax deed, executed a quitclaim deed therefor to Aubrey Hickenbotham.

On May 1, 1937, C. B. Shouse, who was then in possession as a tenant of his brother, J. Loyd Shouse, purchased the lands from his brother for $1,000.

On May 15, 1937, Scovill filed suit to foreclose the mortgage which he had purchased from the Conservative Loan Company, making Mrs. Evans and J. Loyd Shouse and wife defendants. C. B. Shouse was not made a party to this suit, and he testified that he had no knowledge of the pendency of Scovill's foreclosure suit until after he had sold the lands to Aubrey Hickenbotham.

On January 16, 1939, Scovill filed suit against J. Loyd and C. B. Shouse and their wives and against Hickenbotham and wife and O. W. Watkins, in which he alleged that the tax sales were void, and he prayed that should the court find that the defendants, or any of them, owned any interest in the lands, that interest be adjudged only an equity of redemption subject to his mortgage, and that upon their failure to pay the debt secured by his mortgage their equity of redemption should be cut off. The decree from which is this appeal granted the relief prayed after adjudging the tax sales to be void and awarding Hickenbotham judgment for the taxes.

J. Loyd Shouse conveyed the lands to his brother, C. B. Shouse, by quitclaim deed dated May 1, 1937, which was not filed for record until November 9, 1937. The consideration for this conveyance was the sum of $1,000. On December 4, 1937, C. B. Shouse conveyed the lands to Hickenbotham for the recited consideration of $1,250, of which $250 was cash in hand paid, and the balance was

secured by a mortgage executed by Hickenbotham to Shouse on the same day, which was not recorded until April 27, 1938.

For the affirmance of this decree appellee relies upon cases like *Dickinson* v. *Duckworth*, 74 Ark. 138, 85 S. W. 82, 4 Ann. Cas. 846, which hold that one who purchases the interest of the mortgagor in mortgaged land, either before foreclosure or *pendente lite,* only acquires the right of redemption from the mortgage.

The opinion in the case of *Harrison* v. *Bank of Fordyce,* 178 Ark. 760, 12 S. W. 2d 400, delivered subsequent to the enactment of our *lis pendens* statute (§§ 8959-8964, Pope's Digest), is to the same effect. But in the case just cited there was involved no question about the mortgage being barred by the statute of limitations when the mortgagor executed a deed to the mortgaged land.

Here, the suit by Scovill to foreclose his mortgage was filed before the note which it secured was barred by the statute of limitations, but no *lis pendens* notice, required by § 8959 *et seq.,* Pope's Digest, to affect third parties with notice thereof, was given.

There was no notation of any payment on this note indorsed on the margin of the record of the mortgage, as required by § 9465, Pope's Digest, to preserve the lien of the mortgage as against third parties.

The deed from C. B. Shouse and wife to Hickenbotham, dated December 4, 1937, was executed three days after Scovill's mortgage would have been barred by the statute of limitations but for the filing of his suit to foreclose the mortgage.

Hickenbotham testified that, before buying the lands, he examined the mortgage records, and saw that the mortgage was apparently barred as to third parties under § 9465, Pope's Digest, and he then had the circuit clerk and recorder to examine the *lis pendens* record and was advised there was no notice of any pending suit to foreclose the mortgage, and it is not contended that any *lis pendens* notice had been filed. Hickenbotham further testified that he did not know that a suit was pending to foreclose the mortgage, and that if he had had that information he would not have bought the lands.

The deed from C. B. Shouse to Hickenbotham was a quitclaim deed, but under the opinion in the case of *Beith* v. *McKenzie,* 191 Ark. 353, 86 S. W. 2d 176, that fact is unimportant. It was held in that case (to quote a headnote) that "Where payments on a mortgage debt were not noted on the margin of the record, a purchaser acquiring title by quitclaim deed after the mortgage debt was barred, took free from the mortgage, since he was a 'third party' within C. & M. Digest, § 7408 (§ 9465, Pope's Digest), requiring a memorandum of part payment to be entered on the margin of the record."

The facts in the case just cited were that Schrantz executed a mortgage to secure a debt of $1,600 due from him to McKenzie. Payments were made on the debt, which kept it alive between the parties, which were not indorsed on the margin of the record where the mortgage was recorded. The opinion recites the facts to be that Beith purchased the land from Schrantz after the execution of the mortgage with full knowledge that the debt secured by the mortgage had not been paid, and that a balance of approximately $800 was still due McKenzie. With this knowledge, Beith had his attorney examine the record of the mortgage and found there were no indorsements on the margin of any payment having been made thereon, and he then made the purchase from Schrantz by a quitclaim deed. The opinion in that case states that the constructive notice arising from a conveyance by a quitclaim deed could have no higher effect than actual notice, and that this court had held in a number of cases that a third party acquiring an interest in real estate on which there is an outstanding mortgage may invoke the benefit of the statute (§ 9465, Pope's Digest), notwithstanding he may have actual knowledge of the existence of the mortgage.

In holding that Beith had acquired title free from the mortgage lien it was there said: "It appears that appellant used his superior knowledge to work an advantage to himself, and a consequent injury to the mortgagee, who, by reason of her forbearance and ignorance of the law, has lost the security for her debt. We do not commend the actions of appellant as worthy of emulation,

but, unfortunately, the law as written, which we have no power to alter, protects the title he has acquired and vests it in him free of the lien of the mortgage, which, as disclosed by the record, was apparently barred by the statute of limitation.'' This is equally true here.

The opinion in the case of *First State Bank of Eureka Springs* v. *Cook*, 192 Ark. 213, 90 S. W. 2d 510, is in point. The common law rule of *lis pendens* was there stated to be that, one who purchased from a party pending suit a part or the whole of the subject-matter of the litigation, takes it subject to the final disposition of the cause, and is bound by the decision that may be entered against the party from whom he derived title. But it was there said: ''This doctrine has no relation to transactions prior to the institution of the suit, and the statute (§ 6969, C. & M. Digest, now § 8959, Pope's Digest) merely changes the common-law doctrine by requiring that, before third parties can be affected by the suit, a notice of its pendency shall be filed with the recorder of deeds of the county in which the suit is pending, which notice shall set forth certain matters relating to the suit as set out in the statute.''

In that case, Cook, the appellee, had purchased a portion of the mortgaged land from the mortgagor before the institution of the suit, and as to him it was there said: ''Whatever interest appellee (Cook) acquired in the lands claimed by him was acquired before the institution of the suit, and manifestly the doctrine of *lis pendens* has no application.'' But, here, Hickenbotham purchased after the institution of the suit, and this rule is, therefore, applicable.

While the law is that ''One who purchases having actual notice of the pendency of the suit cannot avail himself of the failure to give the *lis pendens* notice required by the statute.'' (*Jennings* v. *Bouldin*, 98 Ark. 105, 134 S. W. 948; *Zeigler* v. *Daniel*, 128 Ark. 403, 194 S. W. 246; *Drummond* v. *Batson*, 162 Ark. 407, 258 S. W. 616), the facts here are that it was not alleged nor is it insisted that Hickenbotham had actual knowledge of the foreclosure suit when he purchased from C. B. Shouse, and he did not have constructive notice of the

■■■■■■■■■■

suit, as the *lis pendens* notice provided by the statute had not been given. Being a third party to the mortgage, which was apparently barred when he purchased, he took title free from the mortgage lien.

We quote from appellee's brief as follows: "Appellee admits that the foreclosure suit filed by him, to which the appellants were not made parties, did not cut off appellants' equity of redemption, unless they had actual knowledge of said suit; but insists that failure to make appellants parties to said foreclosure suit, or to file notice *lis pendens,* did not increase the measure of the appellants' rights, which was merely the equity of redemption that passed to them from the mortgagor."

This contention would be correct but for the fact that, when Hickenbotham, who was a third party as to Scovill's mortgage, purchased the land without notice of the pendency of the foreclosure suit, the mortgage was barred as against innocent third parties.

This view renders it unnecessary to consider the validity of the tax sales. If the tax title was good, appellant Hickenbotham has acquired it, and if the sale was not good he has acquired the title which was held by those who owned the land when the forfeiture occurred.

The decree will, therefore, be reversed, and the cause will be remanded, with directions to enter a decree in accordance with this opinion.